UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00480-RSE

**TASHA L. COOK**                                                                                              **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*[1]                                           **DEFENDANT**

**MEMORANDUM OPINION
AND ORDER**

The Commissioner of Social Security denied Tasha L. Cook's application for supplemental security income benefits. Cook presently seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). Both Cook (DN 20) and the Commissioner (DN 26) have filed a Fact and Law Summary. The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 18).

I. Background

At the time Tasha L. Cook applied for disability benefits, she was twenty-four years old and living with her mother in an apartment in Radcliff, Kentucky. (Tr. 50). Cook has a high-school education. (Tr. 51). She does not have her driver's license and walks to stores near her home when necessary. (Tr. 51). Cook previously worked as a cleaner at the Fort Knox Military Base in 2015 and worked part-time at Goodwill for several months in 2016 through a vocational rehabilitation

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

program. (Tr. 52-53). She did not try to obtain full-time employment at Goodwill after her term ended because of issues with her hands and legs, and she has not attempted to secure other employment. (Tr. 54).

Roughly ten days in a month, Cook has "bad days," where she cannot get out of bed on her own because her legs are so swollen and numb. On those days, she does not leave her house. (Tr. 60-61). Cook sleeps most of the day. (Tr. 61). Other than attending doctors' appointments and visiting her friend's house, she stays at home. (Tr. 68). Cook has a history of seizures. (Tr. 63). Although she hasn't had a full convulsive seizure in a few years, she has partial seizures around three times a month that leave her fatigued and sore. (Tr. 64). Cook explains that her seizures are caused by anxiety from being around a lot of people and from her sensitivity to heat. (Tr. 66). Cook also suffers from daily headaches, neck pain, vision issues in her right eye, and dizzy spells. (Tr. 68-70).

Cook applied for supplemental security income benefits under Title XVI on April 7, 2017, claiming she became disabled on February 1, 2017, as a result of seizures, depression, asthma, sleep apnea, personality disorder, intermittent explosive disorder, bipolar disorder, and migraines. (Tr. 250, 270). Her application was denied initially (Tr. 120) and again on reconsideration (Tr. 133). Administrative Law Judge Steven Collins ("ALJ Collins") conducted a hearing in Louisville, Kentucky, on February 14, 2019. (Tr. 45). Cook and her representative attended the hearing by video from Elizabethtown, Kentucky. (*Id.*). An impartial vocational expert also testified at the hearing. (*Id.*). ALJ Collins issued an unfavorable decision on July 2, 2019. (Tr. 34).

ALJ Collins applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Cook has not engaged in substantial gainful activity since April

6, 2017, her application date. (Tr. 22). Second, Cook has the severe impairments of headaches, epilepsy, optic neuritis, pseudotumor cerebri, morbid obesity, carpal tunnel syndrome status post release, depression, anxiety, and personality disorder. (*Id.*). Third, none of Cook's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 24). Between the third and fourth steps, ALJ Collins found Cook has the residual functional capacity to perform less than a full range of light work with the following limitations:

> The claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently; sit for 6 of 8 hours and stand and/or walk 6 of 8 hours. The claimant can occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch, and crawl; but can never climb ladders, ropes, or scaffolds. The work should not require fine near vision, specifically no reading of fine print defined as 10 point font or smaller. The claimant can frequently handle, finger, and feel. The claimant should avoid concentrated exposure to extreme heat and vibration and have no exposure to hazards including no driving. The claimant can perform simple routine tasks and make simple work-related decisions. There should be few, if any, workplace changes and no fast-paced production requirements and only occasional contact with supervisors and coworkers and no public contact.

(Tr. 25). Fourth, Cook has no past relevant work. (Tr. 33). Fifth and finally, considering Cook's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (*Id.*).

Based on this evaluation, ALJ Collins concluded that Cook has not been under a disability, as defined in the Social Security Act, since April 7, 2017, the date her application was filed. (Tr. 34). Cook administratively appealed ALJ Collins' decision. (Tr. 240-42). The Appeals Council considered Cook's disagreement with ALJ Collins' decision but declined review because her reasons did not provide a basis for changing the decision. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Cook appealed to this Court. (DN 1).

II. Analysis

A. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing that they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion*, Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

B. Analysis

Cook challenges two aspects of ALJ Collins' residual functional capacity ("RFC") determination. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

1. ALJ Collins' Analysis of Dr. Sahner's Opinion

Cook first argues that ALJ Collins failed to properly evaluate the consultative opinion of Crystal Sahner, Psy.D. (DN 20-1, at p. 11). Specifically, Cook claims ALJ Collins' did not properly assess the opinion's consistency with other record evidence. (*Id.*). Cook asserts that ALJ Collins' statement that moderate to marked limitations in her ability to interact with coworkers and supervisors was not supported by other evidence in the record because Plaintiff interacted with family and friends and had notations of normal behavior from treating providers is not an accurate reflection of the record evidence. (*Id.* at p. 2). To undermine ALJ Collins' conclusion, Cook points to repeated notations of her irritability and suffering angry outbursts and the difficulties she has reported in dealing with her friends and family. (*Id.* at p. 13).

The Commissioner responds that ALJ Collins properly considered Dr. Sahner's opinion. ALJ Collins, the Commissioner explains, did not ignore the evidence that Cook identifies but summarized all the medical evidence, including that which did not support his ultimate determination. (DN 26, at p. 8). The Commissioner concludes that ALJ Collins reasonably

discounted the unduly restrictive limitations imposed by Dr. Sahner that were not consistent with or supported by the record evidence. (*Id.* at pp. 9-10).

Dr. Sahner performed a one-time consultative examination of Cook on June 22, 2017. (Tr. 985). In performing her mental status exam, Dr. Sahner noted that Cook's remote memory was intact but that she was unable to recall any items from a five-minute delayed recall task, that she was oriented to person, place, and situation, that she appeared mildly anxious with some depressive ideation but her affect was overall euthymic, that she became frustrated and fatigued during tasks requiring concentration, that her thought content was organized and appropriate to situation, that her fund of information was within an adequate range, that her abstract reasoning was intact, and that her level of intellectual functioning is estimated to be within a low average range. (Tr. 987). Following her examination, Dr. Sahner concluded that Cook's ability to understand, remember, and carry out simple repetitive tasks appears adequate; that her ability to interact appropriately with fellow workers and supervisors in the work place would be "moderately to markedly affected due to difficulties with managing conflict or negative feedback[;]" that her ability to tolerate stress or pressure of daily employment and adapt to routine changes consistently "is likely moderately affected" given that tasks are low stress, not fast-paced, and she does not have to interact with the public; and that her ability to sustain attention and concentration on simple repetitive tasks on a consistent basis is "moderately affected." (Tr. 988).

ALJ Collins, in discussing Dr. Sahner's opinion, indicated that portions of the opinion finding up to marked limitations are generally not supported by Cook's presentation at the exam and "appear[] to be based on [Cook's] subjective reports of conflict." (Tr. 31). ALJ Collins noted that Dr. Sahner's finding of "up to marked limits in the area of social interaction is not supported by the other evidence of record[,]" because Cook has reported "generally normal and frequent

6

interactions with family and friends" and "is typically cooperative with normal behavior across numerous treating providers." (*Id.*). Overall, however, ALJ Collins found the opinion's "moderate limits" were generally persuasive as "well supported by the level of treatment received (medication management) and the longitudinal exams of record that are typically appropriate, intact, or within normal limits." (*Id.*).

In this case, the new regulations for evaluating medical opinion evidence apply because Cook filed her application for supplemental security income benefits after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The new regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion, even the opinions of a claimant's treating physician. *Id.* ALJs now evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. *Id.* (c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id.* (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination. *Id.* (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id.*

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion is consistent "with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* (c)(2).

ALJ Collins appropriately considered the supportability and consistency of Dr. Sahner's opinion. As to consistency, ALJ Collins noted that Dr. Sahner's opined "marked limitation" on

7

Cook's ability to interact appropriately with fellow workers and supervisors was "not supported by the other evidence of record" because Cook "has reported generally normal and frequent interactions with family and friends" and is "typically cooperative with normal behavior across numerous treating providers." (Tr. 31). As to supportability, ALJ Collins considered that Dr. Sahner's restrictive limitation on Cook's ability to interact in the workplace conflicts with Cook's presentation on exam and appears to be based on Cook's subjective reports of conflict. (*Id.*).

Cook contends that ALJ Collins ignored repeated evidence of her irritability and angry outbursts in dealing with her friends and family, which undermines his rejection of Dr. Sahner's opined limitations. (DN 20-1, at pp. 12-13 (citing Tr. 996, 998, 1272, 1292, 1303, 1325, 1441, 1460)). While ALJ Collins did not specifically mention Cook's irritability or past angry outbursts in his RFC determination, he cited to Cook's records from Communicare and noted her varying moods. (Tr. 30). Some of the records Cook cites to reflect her irritable mood due to issues with her family. (Tr. 1296, 1303, 1325). Yet others indicate that Cook's "angry outbursts" were part of her past behavior and that she has used coping mechanisms taught by Communicare to overcome her issues. (Tr. 996, 998). And the records that Cook cites to comprise only a portion of the records from Cook's years of treatment with Communicare. Cook opposes ALJ Collins' alleged picking-and-choosing of evidence to support his RFC but then picks and chooses her own evidence regarding her prior anger and irritability to claim ALJ Collins' determination was erroneous.

It is clear from ALJ Collins' decision that he fully considered the medical evidence in the record in discounting Dr. Sahner's "marked limitation" on Cook's social interaction. Again, "[s]ubstantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F.3d at 695. Cook pointing to some evidence that would support a decision the other

8

way, does not warrant a reversal. ALJ Collins' rejection of one limitation from Dr. Sahner's opinion is supported by substantial evidence in the record.

## 2. ALJ Collins' Analysis of Cook's Credibility

Cook next argues that ALJ Collins failed to properly consider her subjective complaints and only relied on his own sparse summary of the objective evidence. (DN 20-1, at p. 15). Cook contends that ALJ Collins made only a boilerplate assertion that her statements were not entirely consistent with the medical evidence and he should have considered the factors under 20 C.F.R. § 416.929(C)(3) in evaluating her subjective complaints. Because Cook believes her subjective statements were consistent with the objective medical evidence, she states that ALJ Collins' conclusory evaluation does not suffice. The Commissioner argues that ALJ Collins provided a detailed discussion of the evidence related to Cook's subjective complaints and gave adequate reasons for finding her subjective statements were not entirely consistent with the medical evidence. (DN 26, at pp. 10-11).

Although the new regulations have omitted the term "credibility" from the Administration's policy, the underlying regulation regarding credibility determinations remains materially unchanged. 20 C.F.R. § 404.1529(c). When the ALJ evaluates credibility, a claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled. *See* 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the pain alleged. *Walters*, 127 F.3d at 530; *Duncan*, 801 F.2d at 854. In examining credibility, the ALJ considers objective medical evidence, as well as other factors such as evidence of daily activities, the frequency and intensity of pain, medication

taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (c)(3).

To determine whether a claimant suffers from debilitating pain and other symptoms, the Sixth Circuit applies the two-part test set forth in *Duncan*, 801 F.2d at 853. First the ALJ must examine whether there is objective medical evidence of an underlying medical condition. *Duncan*, 801 F.2d at 853. Here, ALJ Collins concluded that Cook's medically determinable impairments "could reasonably be expected to cause the alleged symptoms[.]" (Tr. 27). Second, the ALJ must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical opinion is of such severity that it can reasonably be expected to produce the alleged disabling pain." *Duncan*, F.2d at 853. Here, after thoroughly setting forth Cook's subjective hearing testimony, ALJ Collins determined that her statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 27).

ALJ Collins then proceeded to extensively discuss the record evidence for both Cook's physical and mental impairments. He noted that "[t]he longitudinal exams of record do not support the claimant's allegations regarding the severity of her symptoms and limitations." (Tr 28). Specifically, as to the nature and severity of Cook's mental impairments, ALJ Collins stated that notations in the treatment record "do not indicate that psychological base symptoms would impose broader limitation than those assessed in the residual functional capacity[.]" (Tr. 29-30). He also discussed credibility factors throughout his RFC, including the level of treatment Cook received for individual impairments. For instance, as to Cook's seizure disorder, ALJ Collins noted that since her initial visit with a neurologist in September of 2017, her treatment "has generally

consisted of routine office visits for medication management and ongoing monitoring of her impairments." (Tr. 28). ALJ Collins also considered the claimant's reported daily activities from the hearing, finding that statements Cook made in the record to treating providers demonstrates she is not as limited as she alleges. (Tr. 30).

Cook alleges that ALJ Collins did not address whether her subjective complaints regarding her partial seizures from anxiety causing fatigue and soreness, her stress in dealing with conflict in one-on-one interaction, her panic attacks in public, and her difficulty with memory, were consistent with the objective medical evidence. (DN 20-1, at pp. 17-18). But Cook does not tie these subjective complaints to any specific limitation imposed by the ALJ. And, critically, an ALJ is not required to provide a written evaluation of every piece of evidence in the record, be it objective or subjective, in articulating his RFC determination. *See Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) (finding that ALJ must "sufficiently articulate his assessment of the evidence" to assure that he considered the important evidence and to enable the Court to trace a path of his reasoning).

Because ALJ Collins discussed the subjective and objective medical evidence at length, weighed Cook's testimony against the record evidence, and considered Cook's credibility using the regulatory factors, the Court finds that ALJ Collins' credibility determination is supported by substantial evidence and complies with the applicable regulations.

III. <u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

October 21, 2021

Copies:       Counsel of Record

Regina S. Edwards, Magistrate Judge
United States District Court